UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
ANTHONY ZAPPIN,

                        Plaintiff,                                Case No. _____

             - against -

                                           **COMPLAINT**

J. RICHARD SUPPLE, JR.,
HINSHAW & CULBERTSON LLP,                    Jury Trial Demanded

                         Defendants.
-------------------------------------------------------------- X

Plaintiff Anthony Zappin ("Plaintiff") hereby brings this action against Defendants J. Richard Supple Jr. ("Supple") and Hinshaw & Culbertson LLP ("H&C") alleging the following:

## THE PARTIES

1.     Plaintiff Anthony Zappin is a citizen of the State of West Virginia.

2.     Upon information and belief, Defendant J. Richard Supple. Jr. is a citizen of the State of New York.  Supple was formerly a partner at the law firm Hinshaw & Culbertson LLP in the firm's New York, New York office.

3.     Upon information and belief, Defendant Hinshaw & Culberston LLP is a limited liability partnership organized under the laws of the State of Illinois and maintains its principal place of business at 151 North Franklin Street, Suite 2500, Chicago, Illinois, 60606.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction in this action pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff has a different citizenship (West Virginia) from each of Defendants (New York, Illinois) in this action.  Additionally, the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 because a substantial part of the events and/or omissions giving rise to the claims in this action occurred in this Judicial District.

## FACTUAL ALLEGATIONS

I.      Incorporation of *Zappin v. Hamilton, et al.,* Complaint

6.      Plaintiff hereby incorporates the allegations set forth in the Complaint (Dkt. No. 1) filed in the matter *Zappin v. Hamilton, et al*, Case No. 3:20-cv-00209 pending in the United States District Court for the Southern District of West Virginia as if fully set forth in this Complaint.

II.     Plaintiff's Retention of Defendants in the New York Disciplinary Matter

7.      Days after Sarah Jo Hamilton asked to withdraw from representing Plaintiff in the New York disciplinary matter in September 2016, Plaintiff began searching for new counsel. Plaintiff spoke with several attorneys, many of whom were recommended by Ms. Hamilton, before retaining Defendants to represent him.  Although Defendant Supple was not recommended by Ms. Hamilton, Plaintiff reached out to him because it appeared that he had experience in collateral estoppel disciplinary proceedings.

8.      Prior to Plaintiff formally retaining Defendants as his counsel, Plaintiff provided all the filings in the New York disciplinary matter up to that point in time to Defendant Supple. Subsequently, Plaintiff and Defendant Supple spoke several times about the matter.  During these conversations, it appeared that Defendant Supple had thoroughly reviewed the filings and papers that Plaintiff had provided him prior to retaining him.

9.      Plaintiff decided to retain Defendants because Defendant Supple had what appeared to be a detailed defense strategy.  Specifically, Defendant Supple laid out four (4) things he intended to do if he was retained:

i. File a Motion to Clarify the First Department's September 19, 2016 order granting the First Department Attorney Grievance Committee's ("AGC") April 22, 2016 collateral estoppel petition;

ii. File a Motion for Reconsideration of the First Department's September 19, 2016 order granting the AGC's April 22, 2016 collateral estoppel petition;

iii. File a Motion to Stay the collateral estoppel proceeding pending the outcome of Plaintiff's appeal in the underlying matrimonial action; and

iv. Attempt to engage in settlement negotiations with the AGC in hopes of diffusing the animus the AGC and Staff Attorney Kevin Doyle held towards Plaintiff.

Based on the representations of Defendant Supple that he would undertake this defense strategy, Plaintiff retained Defendants to represent him in the New York disciplinary matter. However, as set forth below, after Plaintiff retained Defendants to represent him, Defendant Supple failed to follow through on any of the items laid out above.

 III. <u>Motion to Clarify the September 19, 2016 Order</u>

 10. In the April 22, 2016 collateral estoppel petition filed by the AGC, Plaintiff was accused of engaging in no less than eight (8) acts of misconduct, which were all distinct. In granting the AGC's petition, the First Department issued an order with only one (1) sentence:

> Ordered that the petition is granted to the extent of finding that, and pursuant to the doctrine of collateral estoppel, respondent is guilty of professional misconduct in violation of RPC 8.4(c), RPC 8.4(d), RPC 8.4(h), RPC 3.1, RPC 3.3(a)(1), RPC 3.3(a)(3) and RPC 3.3(f)(2) of the Rules of Professional Conduct.

(*See* September 19, 2016 Order.) The order was vague and devoid of any factual recitation, analysis or discussion as to the applicable law.

11.     In Plaintiff's conversations with Defendant Supple, he stated that a motion to clarify was necessary for three (3) reasons:

    i.    The September 19, 2016 Order failed to specify what conduct violated each enumerated rule in the order.  This was problematic because in the April 22, 2016 petition, the AGC alleged that multiple distinct acts violated the same rule.  Defendant Supple explained to Plaintiff that this was prejudicial because it was unclear what precise conduct actually was at issue and needed to be mitigated;

    ii.    The September 19, 2016 Order failed to provide any analysis as to why collateral estoppel was appropriate.  Specifically, the First Department had failed to explain how Plaintiff was afforded constitutionally sufficient notice and an opportunity to be heard in the underlying matrimonial action sufficient to now find him guilty of professional misconduct without a hearing before the disciplinary authority; and

    iii.    The September 19, 2016 Order failed to provide any discussion as to why collateral estoppel was appropriate with respect to whether the matrimonial findings relied on by the AGC were "material" and "essential" to the underlying matrimonial judgment sufficient to invoke collateral estoppel.

With respect to all three (3) issues, Defendant Supple stated and agreed that they raised serious constitutional questions and that Plaintiff's right to Due Process may have been infringed by the September 19, 2016 Order.

12.     Despite Defendant Supple appearing to realize the importance that a motion to clarify be filed, he failed to do so.  Despite representing to Plaintiff on several occasions that he

was in the process of "thinking about it" and "preparing it," Defendant Supple never prepared

anything.  Indeed, Defendant Supple completely blew the deadline to file.

13.     Defendant Supple's failure to prepare and file a motion to clarify based on the

above stated issues was materially negligent and prejudicial to Plaintiff in the New York

disciplinary proceeding.

IV.     Motion for Reconsideration of the September 19, 2016 Order

14.     In Plaintiff's conversations with Defendant Supple, he stated on several occasions

that a motion for reconsideration of the September 19, 2016 Order needed to be filed.  Specifically,

he repeatedly claimed that Ms. Hamilton had "fucked up" in her opposition papers to the April 22,

2016 collateral estoppel petition.  Defendant Supple stated that she:  (i) failed to properly raise the

constitutional issues involved in the case; (ii) failed to request compliance and hearing in

accordance with the New York disciplinary rules; (iii) failed to adequately argue the issue of

collateral estoppel, specifically the issue of whether the findings relied on by the AGC were

"material and essential" to the underlying matrimonial judgment; and (iv) failed to raise and

present evidence that Justice Cooper's findings relied on by the AGC were counter to the record,

lacked any evidentiary support and were largely fabricated.  Defendant Supple further critiqued

Ms. Hamilton's efforts by saying that everything should have been laid out in a brief and not in an

affirmation like she had submitted.

15.     Defendant Supple represented to Plaintiff that it was important to file a motion for

reconsideration in order to:  (i) get the constitutional issues properly before the First Department;

(ii) to lay out why collateral estoppel was not appropriate in the case, which Ms. Hamilton failed

to do according to him; (iii) that the AGC was shirking and doing an end-run around the New York

disciplinary rules; and (iv) to get before the First Department the fact that Justice Cooper's findings had no evidentiary merit whatsoever.

16.     Once again, after Plaintiff retained Defendant Supple, he represented to Plaintiff on several occasions that he was "thinking about" and "preparing the motion for reconsideration. However, no motion for reconsideration was ever filed.  Defendant Supple never drafted anything and completely blew the deadline for filing.

17.     Defendant Supple's failure to prepare and file a motion for reconsideration of the September 19, 2016 Order based on the above stated issues was materially negligent and prejudicial to Plaintiff in the New York disciplinary proceeding.

V.     <u>Motion to Stay the New York Disciplinary Matter Pending Plaintiff's Appeal of the Underlying Matrimonial Judgment</u>

18.     One again, in Plaintiff's early conversations with Defendant Supple, he repeatedly represented to Plaintiff that it was of the utmost importance that Plaintiff seek a stay of the New York disciplinary matter pending the outcome of underlying appeal in the matrimonial case. Specifically, Defendant Doyle explained to Plaintiff that the New York disciplinary proceeding was an entirely dependent matter based on the independent matrimonial matter.  By granting the collateral estoppel petition in September 2019, the First Department had effectively decided Plaintiff's appeal of the matrimonial judgment before the appeal had even been filed.

19.     Defendant Supple stated to Plaintiff that it was important to stop the New York disciplinary proceeding in its tracks.  He explained that Ms. Hamilton had already done harm by failing to previously request a stay.  Defendant Supple stated to Plaintiff that should the New York disciplinary matter proceed in parallel with Plaintiff's appeal of the matrimonial judgment, it will cause further problems and prejudice to Plaintiff.  An example Defendant Supple provided to Plaintiff is that should a mitigation/aggravation hearing take place in the New York disciplinary

proceeding, Plaintiff would be unable to provide any testimony at the hearing, such as testimony showing remorse, because it would compromise his appeal.  And, both Plaintiff and Defendant Supple had located case law that supported the proposition that the New York disciplinary proceeding should be stayed.

20.      For months, Defendant Supple represented to both Plaintiff and Plaintiff's father, Jeffrey Zappin, that he was working on a motion to stay the New York disciplinary proceeding pending the appeal of the underlying matrimonial action.  In reality, Defendant Supple never did any work on a motion to stay.  Instead, he allowed a mitigation/aggravation hearing to take place without any objection whatsoever and allowed the New York disciplinary proceeding to proceed in parallel with the underlying matrimonial appeal.

21.      Defendant Supple's failure to prepare and file a motion to stay the New York disciplinary proceeding pending Plaintiff's appeal of the underlying matrimonial action was materially negligent and prejudicial to Plaintiff in the New York disciplinary proceeding.

VI.      Settlement Negotiations with the AGC

22.      During Plaintiff's calls with Defendant Supple prior to retaining him, he represented to Plaintiff that he was significant sway within the AGC having previously worked within the office.  Similarly, Defendant Supple represented to Plaintiff that he was attorney in the AGC that used utilized collateral estoppel and he "knew how to defeat it."  Based on these representations, Defendant Supple stated that he believed he could have settlement negotiations with the AGC whereby Plaintiff would be "given a censure" or be given a "period practicing law under the supervision of another attorney."  Defendant Supple stated that the AGC and Staff Attorney Kevin Doyle held serious animus towards Plaintiff and that he could help diffuse it.

23.     Despite these representations, Defendant Supple never once even attempted to have settlement talks with the AGC or Staff Attorney Kevin Doyle.  Indeed, Defendant Supple was completely blowing smoke to Plaintiff, which he later admitted to Plaintiff.

24.     Defendant Supple's representations on this issue was a large reason as to why Plaintiff retained him.  Defendant Supple's failure to follow through on his promises by failing to even make overtures of settlement with the AGC and Staff Attorney Kevin Doyle was completely fraudulent.  Indeed, a skillful litigator could have diffused the situation at least to the extent that it would have provided some benefit to Plaintiff.  However, Defendant Supple's failure to take any action whatsoever only further heightened tensions and reinforced the AGC and Staff Attorney Kevin Doyle's desire to crucify Plaintiff.

VII.     The Mitigation/Aggravation Hearing

25.     Despite Defendant Supple's early warning that proceeding with a mitigation/aggravation hearing while the underlying appeal of the matrimonial judgment was pending would be disastrous, Defendant Supple did nothing to try to avert it.  And, to make matters worse, he actions before and during the hearing were incredibly negligent and prejudiced Plaintiff.

a.     Defendant Supple Asked for No Discovery

26.     Prior to the mitigation/aggravation hearing, Defendant Supple failed to ask for a single document of discovery, which would have aided Plaintiff's mitigation case.  Specifically, Defendant Supple failed to ask for at least the following necessary and material discovery:

      i.     Documents that Justice Cooper had actually engaged in extrajudicial conduct by providing sealed matrimonial documents in the matrimonial action to the press;

j.      Documents in Justice Cooper's possession related to the metadata to Ms. Comfort's purported domestic violence photographs that showed that the photographs had been digitally altered;

ii.      Documents that Justice Cooper and Staff Attorney Kevin Doyle had collaborated in writing the child custody decision in which the New York collateral estoppel disciplinary proceeding was based on;

iii.      Documents that Plaintiff's co-counsel in the matrimonial action David Schorr had effectively cut a deal with Staff Attorney Doyle and the AGC for a reduced sanction for misconduct in Mr. Schorr's own divorce in return for failing to provide assistance to Plaintiff in his disciplinary proceeding and for Mr. Schorr destroying evidence (*i.e.*, the metadata to Ms. Comfort's purported domestic violence photographs) that were essential to Plaintiff's mitigation case; and

iv.      Documents that Staff Attorney Doyle had extensive communications and colluded with Ms. Comfort's counsel, Robert Wallack, and the Attorney for the Child Harriet Newman Cohen in order to steer the *Zappin v. Comfort* child custody trial into a disciplinary trap for Plaintiff.

These documents not only existed, but were highly relevant and material. Despite Plaintiff's pleas to Defendant Supple, he refused to undertake any action to obtain them for the mitigations/aggravation hearing.

        b.      <u>Failure to Object to the Hearing or Explained Why Plaintiff Was Not Testifying</u>

27.      As stated above, Plaintiff was placed in an unconstitutional conundrum with respect to the mitigation/aggravation hearing. Specifically, because the hearing was taking place while

Plaintiff's appeal of the underlying matrimonial judgment was pending, Plaintiff was placed in a position where he was effectively unable to testify. This was because he highly disputed Justice Cooper's findings and anything Plaintiff testified to at the hearing would either be seen as aggravating (*e.g.*, if he disputed Justice Cooper's findings) or would have compromised his appeal (*e.g.*, if Plaintiff showed "remorse" for conduct related to Justice Cooper's findings).

28.     In other words, the AGC and First Department placed Plaintiff in a constitutionally untenable situation. Specifically, the pendency of the mitigation/aggravation hearing unconstitutionally interfered with Plaintiff's right to pursue his appeal of the underlying matrimonial proceeding. To Plaintiff's great prejudice, Defendant Supple failed to raise any objection or note on the record at the mitigation/aggravation hearing the constitutional issues involved.

29.     At Defendant Supple's advice, Plaintiff did not testify at the mitigation/aggravation hearing for the reasons explained above. Even more important, though, Defendant Supple negligently failed to explain or note on the record why Plaintiff was not testifying and that it could not be construed as a "lack of remorse." Instead, Defendant Supple later negligently allowed the AGC to argue that Plaintiff's silence was a lack of remorse.

c.     Washington, DC Police Report

30.     At the aggravation/mitigation hearing, Defendant Supple negligently allowed Staff Attorney Doyle and the AGC to read into the record a portion of a deposition transcript in which Plaintiff described filing a police report against Ms. Comfort after an episode of domestic violence she had committed against him. At no point did Defendant Supple request that Staff Attorney Doyle or the AGC place an actual copy of the police report in the record. Nor did Defendant

10

Supple request that Staff Attorney Doyle or the AGC explain the relevance of the testimony or

report.

31.     In subsequent post-hearing briefs, without objection, Defendant Supple allowed

Staff Attorney Doyle and the AGC to assert that Plaintiff had filed a false police report against Ms.

Comfort in Washington, DC.  More specifically, Staff Attorney Doyle and the AGC asserted that

Justice Cooper made findings that Ms. Comfort never abused Plaintiff so consequently the police

report must have been false.  This is despite the fact that Justice Cooper made no specific findings

about Plaintiff's Washington, DC police report and that it was never placed in the report where it

could be actually read.  Defendant Supple's failure to object to the AGC's underhanded conduct

was materially negligent and prejudicial to Plaintiff.

         d.     <u>Refusal to Present Evidence that Justice Cooper's Findings Were Fabricated</u>

32.     Perhaps the best mitigation evidence of all is incontrovertible evidence that Plaintiff

did not engage in the conduct attributed to him by Justice Cooper.  Such evidence did exists.  For

example, the following was undisputed:

         i.     Justice Cooper ascribed testimony to Plaintiff and declared that it was false.

                However, the ascribed testimony was found no where in the record;

         ii.    Justice Cooper found that Plaintiff falsified a host of text messages and

                entered them into evidence at trial.  However, upon reviewing the exhibits,

                the text messages described by Justice Cooper were never entered into

                evidence by Plaintiff;

         iii.   Justice Cooper found that Plaintiff induced his expert Dr. Manion to give

                false testimony because, according to Justice Cooper, Dr. Manion testified

                that Plaintiff wrote his expert report.  However, the record is clear that Dr.

Manion never gave such testimony and, in fact, testified that he wrote his own expert report; and

iv.     Undisputed photographic evidence provided by Ms. Comfort's mother showing that contradicted Ms. Comfort's purported domestic violence photographs and showed her without the bruises and marks Ms. Comfort claimed she had.

Despite this incontrovertible and uncontested evidence, Defendant Supple refused to even attempt to introduce it into evidence at the mitigation/aggravation hearing. This was materially negligent and prejudicial to Plaintiff.

e.     Objections to Staff Attorney Doyle Raising New Allegation of Attorney Misconduct in his Post-Hearing Briefs

33.     In Staff Attorney Doyle's post-hearing briefs, he attempted to attribute new allegations of attorney misconduct to Plaintiff that were not raised at the mitigation/aggravation hearing and for which Plaintiff had never been charged. Defendant Supple failed to object to this misconduct by Staff Attorney Doyle, which was negligent and prejudicial to Plaintiff.

VIII.     Defendant Supple's Withdrawal

34.     On July 21, 2017, Defendant Doyle improperly withdrew from the matter. Prior to the withdrawal, Defendant Supple had assured Plaintiff that he was working on preparing a federal lawsuit seeking an injunction against the New York disciplinary proceeding since it was apparent it was brought in bad faith. For months, Defendant Supple strung Plaintiff along.

35.     However, when Plaintiff began to push for the filing after he was subjected to a retaliatory arrest by Justice Cooper where Staff Attorney Doyle and the AGC played a significant role in instigating, Defendant Supple withdrew by letter to the AGC and Referee Martin Gold.

36.     His withdrawal was improper because he failed to first file a motion in the First Department seeking permission to withdrawal.  Indeed, he did not want to do so in an apparent attempt to protect his friends at the AGC.  So, instead, he improperly withdrew by letter without proper notice to Plaintiff.

37.     Defendant Supple's abrupt and improper withdrawal was materially negligent and highly prejudicial to Plaintiff as both Ms. Hamilton and Defendant Supple had effectively exhausted all of Plaintiff funds.  There was no question that Defendant Supple was aware of Plaintiff's financial situation and that he would be unable to hire new counsel.  And, to make matters worse, nearly all of Defendant Supple's failures discussed above were exploited by the AGC and First Department in subsequent briefing and orders, despite Plaintiff trying to correct them *pro se*.

## COUNT 1: NEGLIGENCE/LEGAL MALPRACTICE
### (All Defendants)

38.     Plaintiff re-alleges and incorporates by reference paragraph 1 – 37 of this Complaint as though fully set forth herein.

39.     As legal counsel for Plaintiff, Defendants owed Plaintiff duties of professional care, loyalty, diligence and skill.

40.     By engaging in the conduct set forth above, Defendants failed to exercise ordinary reasonable care and diligence used under the same or similar circumstances by attorneys and thereby breached those duties of professional care owed to Plaintiff.

41.     As a direct and proximate result of Defendants' negligence and failure to exercise reasonable diligence and care in their representation of Plaintiff, Plaintiff has suffered injury and damages with respect to his West Virginia law license.  These damages include, but are not limited

to, attorneys fees, lost wages and damage to his reputation.  The total amount of Plaintiff's injuries

and damages should be determined at trial.

<b><u>COUNT 2: BREACH OF CONTRACT</u></b><br><b>(All Defendants)</b>

42.     Plaintiff re-alleges and incorporates by reference paragraph 1 – 41 of this

Complaint as though fully set forth herein.

43.     Through the conduct alleged in this Complaint, Defendants materially breaches

their express and implied contractual obligations to Plaintiff that it would take all action legally

necessary and appropriate to protect Plaintiff's interests in the collateral estoppel disciplinary

action; that it would perform all legal services with due care and diligence; and that it would

provide Plaintiff with professional, skilled and careful lawyers to handle the proceeding.

44.     Moreover, Defendants breached each of the terms forth in Paragraph 58, where

such terms were material to the agreement that Plaintiff would allow Defendants to continue to

represent him in the collateral estoppel disciplinary proceeding.

<b><u>JURY TRIAL DEMANDED</u></b>

Plaintiff demands a jury on all issues which may be properly tried by jury.

<b><u>PRAYER FOR RELIEF</u></b>

**WHEREFORE**, Plaintiff prays that the Court:

(a)     Enter judgment in favor of Plaintiff against Defendant

(b)     Enter judgment award Plaintiff compensatory damages on all counts herein to

compensate Plaintiff for Defendants' activities complained of herein and for any injury

complained of herein, inclusive of interests and costs, in an amounted to be determined at trial;

(c)     Enter judgment awarding punitive, exemplary, enhanced and/or treble damages as

allowed by applicable state and federal law in an amount to be determined at trial;

14

(d)   Enter judgment awarding Plaintiff his fees and costs reasonably incurred in this

action as allowed by applicable state and federal law; and

(e)   Order such other relief that the Court deems just and appropriate.


Dated: July 20, 2020
       Huntington, WV


_____
ANTHONY ZAPPIN
1827 Washington Blvd.
Huntington, WV 25701
(304) 730-4463 (tel.)
*anthony.zappin@gmail.com*
*Plaintiff, Pro Se*