UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
ANTHONY ZAPPIN,

                Plaintiff,

          - against -                   Case No. 20-cv-5602-LGS-KNF

J. RICHARD SUPPLE, JR., *et al.*,

               Defendants.
-------------------------------------------------------------- X

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR REARGUMENT AND RECONSIDERATION

Dated:  October 28, 2021

Anthony Zappin
1827 Washington Blvd.
Huntington, WV 25701
(304) 730- 4463 (tel.)
anthony.zappin@gmail.com
*Plaintiff*

INTRODUCTION

In this motion, Plaintiff seeks reconsideration of the Court's October 7, 2021 Order ("October 21 Order"), which denied Plaintiff's letter motion requesting leave to file a second amended complaint in this action and effectively dismissed this case. As set forth below, the Court erred in its October 7 Order warranting reconsideration. Moreover, as shown below, Plaintiff should be allowed to proceed on his Proposed Second Amended Complaint ("PSAC").

STANDARD OF REVIEW

Motions for reconsideration are governed by Rule 59 of the Federal Rules of Civil Procedure and Local Civil Rule 6.3. A court may grant a motion for reconsideration "to correct a clear error of law or prevent manifest injustice." *Munafo v. Metro Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004) (internal quotation marks omitted). Put another way, a motion for reconsideration should be granted where "the moving party can point to controlling decisions or data that the court overlooked." *3 Motions in Federal Court* § 9:36.50 (3rd Ed.) (*citing Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36 (2d Cir. 2012).

ARGUMENT

I.   The Court Erroneously Held That Plaintiff Failed to Allege Facts in the PSAC that "Reasonable Justification" Existed Pursuant to CPLR 2221(e) Such that It Would Have Been Proper for Defendants to File a Motion to Renew

The primary thrust of the Court's October 7 Order dismissing this action and denying Plaintiff leave to file his PSAC was its erroneous conclusion that Plaintiff failed to allege that there was a "reasonable justification" as to why Plaintiff's constitutional and actual innocence arguments were missing from his initial response to the Attorney Grievance Committee's ("AGC") April 22, 2016 Collateral Estoppel Petition. (*See* October 7 Order at 4-5.) Without "reasonable justification," the Court held that Defendants could not be held liable for their negligence in failing

to file a motion to renew under CPLR 2221(e) raising such arguments. (*See id.*)  The Court's

conclusion was blatantly and patently wrong.  As set forth below, Plaintiff alleged more than

sufficient facts in the PSAC with respect to the "reasonable justification" requirement to file a

motion to renew under CPLR 2221(e).  Moreover, the Court erroneously overlooked case law that

the First Department does not always apply the "reasonable justification" requirement.

>  A.  Plaintiff Alleged Facts – Namely His Prior Counsel's Negligence and
>      Legal Malpractice – That Illustrated There Was "Reasonable Justification"
>      for Defendant Supple to File a Motion to Renew

In the October 7 Order, the Court dismissed this action and denied Plaintiff leave to file his

PSAC on the stated basis that Plaintiff had failed to allege facts that there was "reasonable

justification" pursuant to CPLR 221 as to why arguments, evidence and facts pertaining to

Plaintiff's actual innocence and his denial of due process were not argued by his prior counsel,

Sarah Jo Hamilton, in response to the AGC's April 22, 2016 Collateral Estoppel Petition.  As a

result, the Court concluded that Defendant Supple could not be held liable for legal malpractice

for his failure to pursue and file a motion to renew presenting arguments, evidence and facts

pertaining to Plaintiff's actual innocence and his denial of due process to the First Department in

the collateral estoppel disciplinary proceeding.  The Court's conclusion is flatly and plainly wrong.

In reaching its conclusion, the Court overlooked material allegations in the PSAC (as well

as the Amended Complaint) illustrating that there was "reasonable justification" existed as

required by CPLR 2221(e) and that Defendant Supple consequently had a legal duty to pursue and

file a motion to renew raising arguments, evidence and facts pertaining to Plaintiff's actual

innocence and his denial of due process both in the First Department in the collateral estoppel

disciplinary proceeding as well as in the underlying matrimonial proceeding before Justice Cooper.

Specifically, Plaintiff alleged repeatedly throughout the PSAC (and Amended Complaint) that his

prior counsel, Sarah Jo Hamilton, had acted negligently and had committed legal malpractice in

failing to raise such issues in her response to the April 22, 2016 Collateral Estoppel Petition.  For

example, these allegations included, but were not limited to:

- "Sarah Jo Hamilton *Negligently* Failed to raise evidence of Plaintiff's Actual Innocence in her Response to the AGC's CE Petition" (*see* PSAC at Section V.A. Heading);

- "In her response to the AGC's CE Petition, Ms. Hamilton failed to raise or point to evidence of Plaintiff's actual innocence in response to Justice Cooper's findings from *Zappin v. Comfort* relied upon by the AGC …." (*see* PSAC at ¶ 21);

- "Defendant Supple was aware that there was evidence of Plaintiff's actual innocence when he took the case and that Ms. Hamilton had failed to raise it in her response to the AGC's CE Petition." (*see* PSAC at ¶ 22);

- "Knowing that Ms. Hamilton *negligently* failed to present or argue this evidence of Plaintiff's actual innocence, Defendants had a duty to Plaintiff to raise it in a motion to reargue/renew" (*see* PSAC at ¶ 33; *see also id*. at ¶¶ 39, 46, 51 (emphasis added));

- "Defendants knew of this evidence of Plaintiff's actual innocence.  Moreover, they knew that Ms. Hamilton *negligently* failed to raise it in her response to the AGC's CE Petition.  Consequently, they had a duty to Plaintiff to raise it in a motion to renew/argue, which they failed to do so" (*see* PSAC at ¶¶ 53, 56 (emphasis added); and

- "Defendants knew that Plaintiff was not afforded constitutionally sufficient notice that he was subject to Justice Cooper's finding relied upon by the AGC and Staff Attorney Doyle.  Moreover, they knew that Ms. Hamilton *negligently* failed to raise this issue with any specificity in her response to the AGC's CE Petition" (*see* PSAC at ¶ 70).

As shown above, it is without question that Plaintiff put forth a "reasonable justification" as to

why arguments, evidence and facts pertaining to Plaintiff's actual innocence and his denial of due

process were not raised in the first instance in response to the April 22, 2016 Collateral Estoppel

Petition:  **<u>Sarah Jo Hamilton's negligence and legal malpractice</u>**.

Moreover, the Court need not merely look to Plaintiff's allegations that Ms. Hamilton was

negligent in failing to raise such issues in Plaintiff's response to the April 22, 2016 Collateral

Estoppel Petition.  Instead, the Court should look to the PSAC that includes statements made by

Defendant Supple to Plaintiff, both of Plaintiff's parents and others about his assessment of Ms.

Hamilton's response to the April 22, 2016 Collateral Estoppel Petition:

> In Plaintiff's conversations with Defendant Supple, he stated on several occasions that a motion to reargue/renew needed to be filed with respect to the September 19, 2016 Order.  Specifically, ***he repeatedly claimed that Ms. Hamilton had "fucked up" in her opposition papers*** to the April 22, 2016 collateral estoppel petition.

> Specifically, Defendant Supple stated to Plaintiff that Ms. Hamilton:  (i) failed to properly raise the constitutional issues involved in the case; (ii) failed to request compliance with the New York Rules for Attorney Disciplinary Matters, 22 NYCRR 1240 *et seq*, which included brining of formal charges, discovery and a hearing on the merits before the disciplinary authority; (iii) failed to adequately argue the issue of collateral estoppel, specifically the issues of whether the findings relied on by the AGC and Staff Attorney Doyle were "material and essential" to the underlying matrimonial judgment and the issue of whether Plaintiff had fair notice that he would be subjected to the findings relied upon by the AGC and Staff Attorney Doyle; and (iv) failed to raise and present evidence that Justice Cooper's findings relied on by the AGC were counter to the record, lacked any evidentiary support and were largely fabricated, which went directly to the issue of whether Plaintiff was afforded a full and fair opportunity to litigate in the matrimonial action.

> Defendant Supple further critiqued Ms. Hamilton's efforts by saying that everything should have been laid out in a brief and not in an affirmation like she had submitted.  Defendant Supple criticized Ms. Hamilton's papers as "incoherent," "***negligent,***" and "totally missing the mark."

(PSAC at ¶¶ 13-16 (emphasis added).)  In other words, according to the PSAC Defendant Supple

affirmatively believed the Ms. Hamilton was negligent and had committed legal malpractice in her

response to the April 22, 2016 Collateral Estoppel Petition by failing to raise constitutional

challenges and by failing to put forth arguments and evidence of Plaintiff's actual innocence.

Moreover, in his conversations with Plaintiff and Plaintiff's parents reflected in the PSAC,

Defendant Supple believed that the only way to remedy Ms. Hamilton's negligence and legal

malpractice was to file a motion to renew to get the arguments, evidence and facts pertaining to

Plaintiff's actual innocence and his denial of due process to the First Department.  In other words,

according to Defendant Supple's own statements alleged in the PSAC, Ms. Hamilton's negligence was the requisite "reasonable justification" under CPLR 2221 for pursuing a motion to renew.

Moreover, New York courts have been wildly lenient in what constitutes "reasonable justification" or "reasonable excuse" for purposes of a CPLR 2221 motion to renew.  In many cases, "[l]aw office failure can be accepted as a reasonable excuse" for purposes of a motion to renew under CPLR 2221.  *See Nwauwa v. Mamos*, 862 N.Y.S.2d 110, 11 (2nd Dept. 2008); *see also Castor v. Cuevas*, 26 N.Y.S.3d 564, 565 (2nd Dept. 2016).  In other cases, mere "clerical error" has been accepted as reasonable justification under CPLR 2221.  *See Hackney v. Monge*, 960 N.Y.S.2d 176, 178 (2nd Dept. 2013).  New York courts have even accepted "miscommunications among offices" and "inadvertent omissions" as reasonable excuses allowing CPLR 2221 motions to renew to proceed.  *See Picone/WDF v. City of New York*, 1441 N.Y.S.3d 686, 688 (1st Dept. 2021); *Telep v. Republic El. Corp.*, 699 N.Y.S.2d 380, 381 (1st Dept. 1999).  Thus, the bar to clear the "reasonable justification" hurdle in CPLR 2221 is low.

In this case, however we have a more serious circumstance.  The PSAC alleges that Ms. Hamilton did not merely commit inadvertent errors or omissions.  Rather, it makes clear both through the recitation of facts and the statements made by Defendant Supple himself that Ms. Hamilton was negligent and had committed legal malpractice in her response to the April 22, 2016 Collateral Estoppel Petition.  Ms. Hamilton's negligence and legal malpractice was something that was out of Plaintiff's control and fundamentally infringed on his right to competent counsel.  No reasonable court could conclude that negligence or legal malpractice by counsel is not a "reasonable justification" or "reasonable excuse" under CPLR 2221.  In fact, at least one New York court has held negligence and legal malpractice to be "reasonable justification" under CPLR 2221.  *See Garcia v. Berns Dekajlo Castro*, 2010 N.Y. Slip. Op. 31522, at *21 (Sup. Ct. N.Y.

Cnty. June 10, 2010) ("[T]he legal malpractice of plaintiff's attorney may likewise constitute a reasonable excuse for plaintiff's failure to present the three affidavits at the Traverse Hearing or in his opposition to confirm the Special Referee's Report.").

In sum, the Court was flat out wrong in its October 7 Order. Plaintiff repeatedly alleged in the PSAC that there was "reasonable justification" in failing to raise arguments pertaining to Plaintiff's actual innocence and his denial of due process in his initial response to the April 22, 2016 Collateral Estoppel Petition, namely counsel Sarah Jo Hamilton's negligence. Defendant Supple's own statements contained in the PSAC confirm this. Consequently, the Court must reconsider its October 7 Order and allow Plaintiff to proceed on his PSAC.

B.      "Reasonable Justification" Is Not Always a Prerequisite to Filing a Motion to Renew under CPLR 2221

The Court overlooked clear authority under New York law that "reasonable justification" for failure to previously present new facts or arguments is not always a requirement to bring a motion to renew. Indeed, the First Department has held that the "reasonable justification" requirement under CPLR 2221 is a "flexible one." *See Tishman Const. Corp. of New York v. City of New York*, 280 A.D.374, 376 (1st Dept. 2001). The First Department may grant renewal even where the reasonable justification requirement has not been met "so as not to defeat substantive fairness." *Id.*; *see also Racho Santa Fe Ass'n v. Dolan King*, 36 A.D.3d 460, 461 (1st Dept. 2007).

In this case, the PSAC illustrates an extreme situation where Plaintiff was denied substantive fairness. Not only was it virtually undisputed by the AGC that Plaintiff was denied adequate notice that he would be subject to Justice Cooper's findings relied upon by the AGC in its April 22, 2016 Collateral Estoppel Petition, but there was incontrovertible evidence of Plaintiff's actual innocence with respect to the allegations of misconduct. This evidence, which

was deduced simply by looking at the *Zappin v. Comfort* record, showed that Justice Cooper

fabricated findings relied upon by the AGC.  This included, but was not limited to the fact that:

- The text messages that Justice Cooper found Plaintiff falsified and entered into evidence at the *Zappin v. Comfort* child custody trial are actually found nowhere in the record or the exhibit list.  Even worse, they do not exist.  (*See* PSAC at ¶¶ 24-28.)

- The transcripts from the *Zappin v. Comfort* child custody trial show that Dr. Manion never testified that Plaintiff wrote his expert report.  Rather. Dr. Manion testified that only he wrote his expert report.  This directly contradicted Justice Cooper's finding the Dr. Manion testified Plaintiff wrote his expert report.  (*See* PSAC at ¶¶ 29-33.)

- The transcripts from the *Zappin v. Comfort* child custody trials show that the supposed testimony attributed to Plaintiff by Justice Cooper and found to be "false" and "perjured" is nowhere to be found.  Plaintiff never gave the testimony Justice Cooper attributed to him as "false" making Plaintiff completely innocent of any allegation the he perjured himself.  (*See* PSAC at ¶¶ 34-39.)

- Undisputed evidence located after trial showed that Ms. Comfort, Plaintiff's ex-wife, had falsified text messages to make it appear as if she was domestically abused.  (*See* PSAC at ¶¶ 40-46.)

- Timestamped photographs from Ms. Comfort's mother conclusively showed that Ms. Comfort was not domestically abused and did not suffer the injuries she had claimed to sustain in statements she made under oath in testimony and multiple sworn statements.  (*See* PSAC at ¶¶ 47-54.)

The evidence of Plaintiff's innocence with respect to Justice Cooper's findings in *Zappin v.*

*Comfort* is overwhelming, conclusive and unrefuted.

Consequently, Plaintiff was in a position where he would suffer extreme prejudice and

harm without an opportunity to present evidence of his actual innocence through a motion to

renew.  Unquestionably, had Defendant Supple not breached his duty to Plaintiff and filed the

motion to renew raising these unrefuted and conclusive facts of Plaintiff's actual innocence, the

First Department – applying its own standard "defeating substantial injustice" – would have

considered Plaintiff's motion to renew even if "reasonable justification" under CPLR 2221 was

lacking.  Indeed, no one would argue that it would not be a travesty and a substantial injustice to

find an innocent man guilty of misconduct that the trial record conclusively shows that he did not

commit.  As a result, the Court erred in its October 7 Order by applying only the "reasonable

justification" standard for a motion to renew.

C.     Defendant Supple Was the "But-For" Cause of Plaintiff's Disbarment

Defendant Supple was without question that "but-for" cause of Plaintiff's disbarment.  As

set forth above and in the PSAC, a motion to renew would have been viable under CPLR 2221(e).

Defendant Supple consequently had a duty to present the First Department with evidence and facts

of Plaintiff's actual innocence as well as with facts and data showing that Plaintiff was denied

adequate notice and an opportunity to defend himself in front of Justice Cooper in *Zappin v.

Cooper*.  Had these facts been presented to the First Department, that court would have had a legal

and ethical duty to vacate its October 17, 2016 Order summarily finding Plaintiff guilty of

misconduct.  More importantly, it would have triggered Rule 3.8 ethical responsibilities for the

AGC and Staff Attorney Doyle to withdraw the Collateral Estoppel Petition.  Accordingly, in

failing to file a motion to renew with the additional facts set forth in the PSAC, Defendant Supple

was negligent and committed egregious legal malpractice.  More importantly, he was clearly the

"but-for" cause of Plaintiff's harm and the loss of his law license.

II.    Defendant Supple Allowed the AGC to Introduce Uncharged and Unmitigated
       Assertions of Misconduct Where Plaintiff Failed to Have an Opportunity to
       Meaningfully Contest Them

Perhaps most baffling of all about the October 7 Decision is the Court's stance that there

was nothing improper about Defendant Supple allowing the AGC and Staff Attorney Doyle to

introduce uncharged and unlitigated assertions of misconduct about Plaintiff. (*See*October 7 Order

at 6.)    Not only did the Court not accurately reflect what is alleged in the PSAC, but the Court

showed a shockingly troubling ambivalent attitude towards prosecutorial misconduct.

8

As the PSAC alleges, there were several uncharged, unlitigated and outright false assertions of misconduct levied by the AGC at Plaintiff during the mitigation/aggravation hearing. In each of these instances, the evidence was either improperly introduced in violation of the Rules of Evidence or were presented in such a way that Plaintiff was precluded from having an opportunity to respond and meaningfully defend himself.  For example, the PSAC details":

- During the mitigation hearing, Staff Attorney Doyle accused Plaintiff of filing a false police report against his ex-wife in Washington, DC.  Instead of introducing the report itself, Staff Attorney Doyle testified about the contents of the police report (which he totally lied about).  This was improper as it violated numerous Rules of Evidence, including the Best Evidence Rule, Hearsay Rule and the rule against counsel testifying. Such testimony by Staff Attorney Doyle should not have been admitted.  However, Defendant Supple failed to object and the First Department went on to rely on Staff Attorney Doyle's testimony about the Washington, DC police report as an aggravating factor in its March 8, 2018 decision.  (*See generally* PSAC at ¶¶ 104-106.)

- In post-hearing briefs, Staff Attorney Doyle raised accusations that Plaintiff filed a "false" police report against Justice Cooper concerning a November 2, 2016 incident in Lower Manhattan.  Staff Attorney Doyle raised it in post-hearing reply briefs so as to deny Plaintiff an opportunity to respond.  This was improper and should have been stricken.  Defendant Supple negligently failed to object.  As a result, the First Department went on to list the accusation as an aggravation factor in its March 8, 2018 decision.  (*See generally* PSAC at ¶¶ 107.)

- In post-hearing briefs, Staff Attorney Doyle accused Plaintiff of "falsely" accusing Justice Cooper of beating his own ex-wife during their divorce in the 1990's.  Plaintiff made no such statements.  Staff Attorney Doyle raised it in post-hearing reply briefs so as to deny Plaintiff an opportunity to respond.  This was improper and should have been stricken.  Defendant Supple negligently failed to object.  As a result, the First Department went on to list the accusation as an aggravation factor in its March 8, 2018 decision.  (*See generally* PSAC at ¶¶ 107.)

- In post-hearing briefs, Staff Attorney Doyle accused Plaintiff of separately "putting up websites" and "defaming" Harriet Newman Cohen.  These accusations were false. Regardless, Staff Attorney Doyle raised it in post-hearing reply briefs so as to deny Plaintiff an opportunity to respond.  This was improper and should have been stricken. Defendant Supple negligently failed to object.  As a result, the First Department went on to list the accusation as an aggravation factor in its March 8, 2018 decision.  (*See generally* PSAC at ¶¶ 107.)

There is no doubt that Defendant Supple was negligent in failing to move to strike these uncharged and unlitigated accusation of misconduct by Staff Attorney Doyle.

If Defendant Supple had moved to strike these improper and unlitigated accusations of misconduct by Staff Attorney Doyle, which were blatantly improper under the law, this Court's so-called list of "thirteen [13] aggravating factors" would have been cut in half.  (*See* October 7 Order at 5.)  Couple that with evidence of Plaintiff's actual innocence that should have been introduced through a motion to renew, there are no findings of misconduct and no aggravating factors left.  Plaintiff would not have been disbarred or even disciplined.

III.     The Court's Analysis Improperly Usurped the Jury's Role in Determining "But For" Causation

In the October 7 Order, the Court applied an incorrect analysis in dismissing this action and denying Plaintiff leave to file the PSAC.  Specifically, it looked at alleged negligent act individually as to whether it would have changed the result of collateral estoppel disciplinary action.  (*See generally* October 7 Order.)  This was radically inappropriate.

As set forth in the PSAC, Defendant Supple literally did <u>nothing</u> to defend Plaintiff and effectively served him up to be slaughtered by the AGC and First Department.  A reasonable jury could infer that a combination of Defendant Supple's negligent acts was the "but for" cause of Plaintiff's harm and the loss of his law license. *See Baltimore S.S. Co. v. Phillips*, 274 U.S. 316, 321 (1927).  In sum, the Court improperly analyzed the factual allegations in the PSAC and inappropriately substituted its judgment for that of jury.

CONCLUSION

For the reasons set forth above, the Court must reconsider its October 7 Order and allow Plaintiff to proceed on the PSAC with his legal malpractice claims against Defendants.

10

Dated:  October 28, 2021
        Huntington, West Virginia



_____
Anthony Zappin
1827 Washington Blvd.
Huntington, WV 25701
(304) 730-4463 (tel.)
anthony.zappin@gmail.com
*Plaintiff, Pro Se*

## CERTIFICATE OF SERVICE

I hereby certify that, on October 28, 2021, I caused a copy of the foregoing "Memorandum of Law in Support of Plaintiff's Motion for Reargument and Reconsideration," dated October 28, 2021, to be served electronically through the Court's CM/ECF e-filing system on counsel of record for all Defendants in this matter.


Dated:  October 28, 2021
        Huntington, West Virginia

_____
ANTHONY ZAPPIN